# Exhibit A

1

14LJGOLP                      Plea

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          S1 10 Cr. 56 RJS

5    JASON GOLDFARB,

6                    Defendant.

7    ------------------------------x

8

9                                         April 21, 2011
                                          3:10 p.m.
10

11

12   Before:

13                    HON. RICHARD J. SULLIVAN,

14                                         District Judge

15

16                         APPEARANCES

17

18   PREET BHARARA,
          United States Attorney for the
19        Southern District of New York
     ANDREW L. FISH,
20        Assistant United States Attorney

21

22   MICHAEL L. SOSHNICK,
          Attorney for defendant Goldfarb
23

24

25

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

```
1          (In open court)

2          (case called)

3          THE COURT:  Please be seated.  All right.

4          My understanding, Mr. Soshnick, is that your client

5    would like to withdraw his previously-entered plea of not

6    guilty and plead guilty to actually the superseding indictment.

7          Is that correct?

8          MR. SOSHNICK:  Yes, your Honor.

9          THE COURT:  Mr. Goldfarb, before I accept your guilty

10   plea, I am going to ask you certain questions.  The purpose of

11   these questions is to, first of all, make sure you fully

12   understand your rights, the rights you have under the

13   Constitution and laws of the United States, and also to make

14   sure that you are pleading guilty because you are guilty and

15   not for some other reason.

16         During the course of the next half hour or so, I'll

17   ask you questions.  If you don't understand my question,

18   obviously let me know.  I'll clarify it or I'll see what the

19   problem is.  If you would like to confer with your attorney,

20   Mr. Soshnick, before answering my questions, that is fine, too.

21         What you shouldn't do, of course, is answer a question

22   that you don't understand or make a false statement.  If you

23   were to make a false statement here in court, that could be a

24   separate crime.  In a moment I'm going to ask you to take an

25   oath.  This will be an oath that you'll truthfully answer the
```

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

3

14LJGOLP                    Plea

1    questions I put to you.

2              Under that oath, if you make a false statement, you

3    could be prosecuted for perjury or obstruction of justice or

4    making false statements.  Again if I am not clear or you don't

5    understand a question, let me know.  If you want to talk to Mr.

6    Soshnick, that is fine.  I won't rush you.  I want to make sure

7    you have the time and feel comfortable, okay?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Let's, if you could, have Mr. Goldfarb

10   take the oath.

11             (The defendant was duly sworn)

12             THE COURT:  Mr. Goldfarb, could you tell me your full

13   name?

14             THE DEFENDANT:  Jason Gordon Goldfarb.

15             THE COURT:  How old are you?

16             THE DEFENDANT:  32.

17             THE COURT:  How far did you go in school?

18             THE DEFENDANT:  I graduated law school.

19             THE COURT:  Are you now or have you recently been

20   under the care of a doctor or a psychiatrist?

21             THE DEFENDANT:  I am treating with a psychologist.

22             THE COURT:  Psychologist?

23             THE DEFENDANT:  Yes.

24             THE COURT:  How long, approximately?

25             THE DEFENDANT:  Six months, maybe.

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

4

14LJGOLP                          Plea

1            THE COURT:  Are you taking any medications in

2     connection with that?

3            THE DEFENDANT:  No.

4            THE COURT:  Have you ever been hospitalized or treated

5     for any kind of mental illness or any kind of addiction,

6     including drug or alcohol addiction?

7            THE DEFENDANT:  No, your Honor.

8            THE COURT:  Have you taken any drugs or any medicine,

9     any pills or have you drunk any alcohol in the past 48 hours?

10           THE DEFENDANT:  I may have had a beer maybe around 48

11    hours ago.

12           THE COURT:  Is your mind clear today?

13           THE DEFENDANT:  My mind is clear.

14           THE COURT:  Do you understand the nature of this

15    proceeding and what will take place here today?

16           THE DEFENDANT:  I do, your Honor.

17           THE COURT:  Mr. Soshnick, do you have any doubt as to

18    your client's mental competence or his ability to enter an

19    informed plea?

20           MR. SOSHNICK:  None whatsoever.

21           THE COURT:  Mr. Fish, do you have any such doubt?

22           MR. FISH:  No, your Honor.

23           THE COURT:  On the basis of Mr. Goldfarb's responses

24    to my questions, my observations of his demeanor and the

25    representations of counsel, I find that Mr. Goldfarb is fully

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

5

14LJGOLP                        Plea

1     competent to enter an informed plea at this time.

2              Mr. Goldfarb, as I understand it, you wish to plead

3     guilty to two counts in the superseding indictment.  Is that

4     correct?

5              THE DEFENDANT:  That is correct, your Honor.

6              THE COURT:  Do you feel you've had enough of an

7     opportunity to discuss the charges and to confer with your

8     lawyer about any possible defenses you may have to these

9     charges?

10             THE DEFENDANT:  I have, Judge.

11             THE COURT:  Are you satisfied with Mr. Soshnick's

12    representation of you?

13             THE DEFENDANT:  I am, your Honor.

14             THE COURT:  What I want to do now is spend a few

15    moments going over your Constitutional rights, the rights you

16    have under the laws and Constitution of the United States.

17    I'll do that in two ways:

18             First of all, there is a document that should have in

19    front you, an advice of rights form.  In addition to that, I'll

20    ask you questions about that.  In addition to that, I'll ask

21    you questions here in open court that go over a lot of the same

22    ground.  The purpose is to make sure you really do understand

23    these rights and also to give you an opportunity, if you have

24    any questions, to raise those questions.  Don't be shy.  You

25    have gone to law school so you probably know better than most

6

14LJGOLP                         Plea

1    these rights and why they're there.  If you have any questions,

2    just let me know, and we'll take care of them.

3                THE DEFENDANT:  I appreciate it.

4                THE COURT:  I will start with the advice of rights

5    form.  Do you have it?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Is that your signature on the second page?

8                THE DEFENDANT:  It is.

9                THE COURT:  Before you signed it, did you read it?

10               THE DEFENDANT:  I did.

11               THE COURT:  Did you have a full opportunity to discuss

12   those rights and any questions you may have had about them with

13   your attorney, Mr. Soshnick?

14               THE DEFENDANT:  I did, your Honor.

15               THE COURT:  Mr. Soshnick, is that your signature on

16   the third page?

17               MR. SOSHNICK:  Yes, it is.

18               THE COURT:  Before you signed it, did you have an

19   opportunity to discuss that document and the rights described

20   in that document with Mr. Goldfarb?

21               MR. SOSHNICK:  Yes, your Honor.

22               THE COURT:  If you could hand that up to my law clerk,

23   I'll mark it as a court exhibit.  I'll mark it as Court Exhibit

24   1 and date it and initial it.  Off the record.

25               (Off-the-record discussion)

             SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

7

14LJGOLP                    Plea

```
 1          THE COURT:  As I said, in addition to this document, I
 2   will go over these other rights.  First of all, under the
 3   Constitution and laws of the United States, you have a right to
 4   a speedy and public trial by a jury on the charges contained in
 5   the superseding indictment.  Do you understand that?
 6          THE DEFENDANT:  I do.
 7          THE COURT:  At trial you would, of course, be presumed
 8   innocent, and the government would have to prove you guilty
 9   beyond a reasonable doubt by competent evidence before you
10   could be found guilty.  Do you understand that?
11          THE DEFENDANT:  I understand that.
12          THE COURT:  A jury of twelve people would have to
13   agree unanimously that you were guilty before you could be
14   found guilty.  Do you understand that?
15          THE DEFENDANT:  I do.
16          THE COURT:  You certainly wouldn't have to prove you
17   were innocent if you went to trial.  Do you understand that?
18          THE DEFENDANT:  I do.
19          THE COURT:  I am sure you do understand this because
20   of your training.  As you know, you would have no burden at
21   all.  You could sit silently at the back table, and the burden
22   would always be on the government to prove its case beyond a
23   reasonable doubt, and I would tell the jury that.  Do you
24   understand that?
25          THE DEFENDANT:  I understand.
```

8

14LJGOLP                    Plea

1           THE COURT:  During trial and at every stage of your

2    case, you would be entitled to be represented by an attorney.

3    If you couldn't afford an attorney, one would be appointed for

4    you at no cost to you.  Do you understand that?

5           THE DEFENDANT:  I do.

6           THE COURT:  Mr. Soshnick is retained.  Is that right?

7           THE DEFENDANT:  Retained, yes.

8           THE COURT:  If you couldn't afford to pay him any

9    more, you're broke, I would appoint a lawyer to represent you.

10   It would be a lawyer from a panel of lawyers approved by the

11   court, competent, experienced lawyers available for just that

12   purpose.  Do you understand that?

13          THE DEFENDANT:  I understand.

14          THE COURT:  During the trial, the witnesses for the

15   government would have to come into court and they'd have to

16   testify in your presence.  Do you understand that?

17          THE DEFENDANT:  I do.

18          THE COURT:  We wouldn't be doing it in this courtroom,

19   but they're all pretty similar.  In my courtroom, you would be

20   over there, but there is a witness box right here and the

21   witness would sit there so you could see the witness and you

22   could hear the witness.  It is your right.  The witness would

23   be able to see you.  Basically that is a right you're

24   guaranteed by the Constitution, the confrontation clause that

25   allows you to confront your accuser, to hear and see what

                                                                9
    14LJGOLP                        Plea

1   they're saying.  Do you understand that?

2           THE DEFENDANT:  I do.

3           THE COURT:  If there were a trial, your attorney, Mr.

4   Soshnick, would have the opportunity to cross-examine those

5   witnesses and to object to the government's proof if you wish.

6           Do you understand that?

7           THE DEFENDANT:  I do.

8           THE COURT:  As I said before, you would have no

9   obligation to do anything at the trial.  If you wanted to, you

10  could put on a case in your defense, which means you could call

11  witnesses, introduce exhibits and other evidence at trial.

12          Do you understand that?

13          THE DEFENDANT:  I do.

14          THE COURT:  If there were witnesses you wanted to

15  call, for example, and they told you I don't really want to get

16  involved, I don't feel like coming to court and testifying,

17  then you could have process used or subpoenas most likely that

18  would require them to come into court to testify truthfully

19  under oath.  Do you understand that?

20          THE DEFENDANT:  I do.

21          THE COURT:  You yourself, of course, would have the

22  right to testify if you chose to testify, but you'd also have

23  the right not to testify.  If you chose not to testify, the

24  jury could draw no negative inference or no suggestion of guilt

25  as a result of the fact you chose not to testify.

            SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300

14LJGOLP                    Plea

1           Do you understand that?

2           THE DEFENDANT:  I understand.

3           THE COURT:  That is a pretty bedrock principle.  I am

4    sure you understand that.  That is the kind of point I would

5    make to the jury at the beginning of the trial and then at the

6    end of the trial as well and maybe once in-between for good

7    measure because it is important they understand that.  I think

8    they do, but it is such an important principle, I would tell

9    them.  You understand that?

10          THE DEFENDANT:  I do understand that.

11          THE COURT:  If you were convicted at trial, you then

12   would have the right to appeal the jury's verdict.  Do you

13   understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  Even now, Mr. Goldfarb, as you're getting

16   ready to enter a guilty plea, you have a right to change your

17   mind.  That would be fine.  You haven't crossed the point of no

18   return yet.  We may get there soon, but if you told me right

19   now, you know what, I change my mind, I'd like to go to trial,

20   that would be fine.  I certainly wouldn't be mad at you.  Mr.

21   Soshnick wouldn't be mad at you, Mr. Fish would not be mad at

22   you.  We all understand it is your decision and it is your

23   right.  We respect that right, and if you wish to go to trial,

24   we'll do it.  Do you understand that?

25          THE DEFENDANT:  I understand.

14LJGOLP                     Plea

1          THE COURT:  Do you nevertheless wish to go forward
2     with your guilty plea at this time?
3          THE DEFENDANT:  I wish to go forward at this time,
4     Judge.
5          THE COURT:  Do you understand if you plead guilty and
6     I accept your guilty plea, of course, there will be no trial
7     and you will have given up your right to a trial and all the
8     other rights I have just mentioned?
9          THE DEFENDANT:  I understand.
10          THE COURT:  Although I am not going to sentence you
11     today, if you plead guilty, then I would sentence you on the
12     basis of your plea.  Do you understand that?
13          THE DEFENDANT:  I understand.
14          THE COURT:  All the other rights I mentioned would be
15     gone except for your right to counsel.  I want to make sure
16     you're clear about that.  I think you are, but that right would
17     continue.  You wouldn't be waiving that right.
18          Through the plea, through sentencing and then through
19     appeal if there were an appeal, you would continue to have a
20     right to a lawyer.  The other rights would all be waived.
21          Do you understand that?
22          THE DEFENDANT:  I understand.
23          THE COURT:  You certainly wouldn't be able to appeal
24     whether or not you committed the crime after you pled guilty.
25     You might be able to appeal the sentence, but you almost

SOUTHERN DISTRICT REPORTERS, P.C.         (212) 805-0300

14LJGOLP                    Plea

1    certainly would not be able to appeal whether or not you

2    committed the crime that you pled to.  Do you understand?

3              THE DEFENDANT:  I understand.

4              THE COURT:  Then I want to make sure you also

5    understand not at this moment, but shortly I will ask you to

6    tell me what it is you did that makes you guilty of this crime,

7    and you will, therefore, have to give up your right not to

8    incriminate yourself, which is an important right.

9              You have the right to be silent.  You have the right

10   to do nothing at a trial.  If you're going to plead guilty, I

11   am going to need to be persuaded you are pleading guilty

12   because you are guilty and not for some other reason.  For that

13   reason, I will ask you to tell me in your own words what it is

14   you did that makes you guilty of these crimes.

15             Do you understand?

16             THE DEFENDANT:  I understand.

17             THE COURT:  Do you understand each and every one of

18   these rights, Mr. Goldfarb?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You are willing to give up your right to a

21   trial and the other rights I mentioned?

22             THE DEFENDANT:  I am.

23             THE COURT:  Have you received a copy of the

24   superseding indictment in this case --

25             THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                      Plea

1            THE COURT:  -- the S1 indictment, this is the first

2    time you have appeared with that following the return of that

3    indictment, correct?

4            THE DEFENDANT:  Correct.

5            THE COURT:  Have you read it?

6            THE DEFENDANT:  I have.

7            THE COURT:  You discussed it with your attorney, Mr.

8    Soshnick?

9            THE DEFENDANT:  I have.

10           THE COURT:  Let me to read it.  You have a right to a

11   public reading of the indictment.  I am happy to read it.

12           THE DEFENDANT:  Let me save you the trouble.  I have

13   read it.

14           THE COURT:  You have had enough time to discuss with

15   him the charges, which really aren't that different than they

16   were in the prior version and any defenses you may have.

17           You covered that with him, right?

18           THE DEFENDANT:  Yes, we went over it all.

19           THE COURT:  I want to make sure you understand you are

20   charged in Count 1 with conspiring with others to commit

21   securities fraud, in violation of Title 18 of the United States

22   Code, Section 371, and that in Count 3 with securities fraud,

23   in violation of Title 15 of the United States Code, Sections 78

24   (j), Subsection (b) and 78 (f)(f) as well as Title 17 of the

25   CFR, Code of Federal Regulations, Sections 240.10b-5 and 240.20

14LJGOLP                    Plea

1    (b)(5)(2) as well as Title 18 of the United States Code,

2    Section 2.  Those are the crimes you're charged with.

3             Do you understand that?

4             THE DEFENDANT:  I understand.

5             THE COURT:  I am going to ask Mr. Fish to summarize

6    the elements of this crime.  When I say "elements," of course,

7    I mean basically the requirements of this crime.  These are the

8    things the government would have to prove beyond a reasonable

9    doubt before you could be found guilty if you went to to trial.

10            These are the things I'll have to be persuaded have

11   been demonstrated before I will accept a guilty plea.  Listen

12   carefully to Mr. Fish.  If you have any questions about those

13   elements, let us know and we'll clarify it.  Even for a lawyer

14   sometimes this can be confusing.  It is very important.  Pay

15   attention to Mr. Fish.

16            THE DEFENDANT:  Sure.

17            MR. FISH:  With respect to conspiracy, the elements

18   are:

19            First, that two or more persons entered into an

20   unlawful agreement;

21            Second, that the defendant knowingly and willfully

22   became a member of the conspiracy;

23            Third, that any one of the members of the conspiracy

24   knowingly committed an overt act; and

25            Fourth, the overt act was committed to further some

15

14LJGOLP                      Plea

1    objective of the conspiracy.

2            With respect to Count 3, securities fraud, in

3    particular insider trading, the elements are:

4            First, in connection with the purchase or sale of a

5    security, the defendant employed a device, scheme or artifice

6    to defraud or made an untrue statement of a material fact or

7    omitted to state a material fact that made what was said under

8    the circumstances misleading, or engaged in any act, practice

9    or course of business that operated or would operate as a fraud

10   or deceit upon a purchaser or seller of a security.  The

11   specific device, scheme or artifice and act, practice or course

12   of business at issue here is known as insider trading.  An

13   insider is one who comes into possession of confidential

14   material, nonpublic information about a specific security or

15   stock by virtue of a relationship that involves trust and

16   confidence.  Insider trading occurs when, among other things,

17   an individual misappropriates information from an entity to

18   whom the individual owed a duty of confidentiality and then

19   delivers that information to others to execute securities

20   transactions;

21           Second, that the defendant acted willfully, knowingly,

22   with the intent to defraud; and

23           Third, that the defendant used or caused to be used

24   any means or instruments or transportation or communication in

25   interstate commerce, including the facilities of the National

                 SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

16

14LJGOLP                      Plea

1    Securities Exchange or the mails in furtherance of the

2    fraudulent conduct.

3              THE COURT:  Thank you, Mr. Fish.  That is kind of a

4    mouthful.  Do you understand what Mr. Fish just said?

5              THE DEFENDANT:  I do.

6              THE COURT:  Are there any questions about any of those

7    elements?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  I am confident you and Mr. Soshnick

10   discussed that.  I don't want to get into the substance of your

11   conversations.  You feel you have had enough time to discuss

12   these elements with your attorney?

13             THE DEFENDANT:  I have.

14             THE COURT:  I want to go over with you very briefly

15   the maximum penalties you face for these crimes, all right?

16             Count 1, which is the conspiracy count, carries a

17   maximum term of imprisonment of five years.  It carries a

18   maximum term of supervised release of three years, a maximum

19   fine of the greatest of either $250,000 or twice the gross

20   pecuniary or financial gain derived from the offense or twice

21   the gross pecuniary or financial loss to persons other than

22   yourself that resulted from the offense.  Whichever is greatest

23   of those three, that is the maximum penalty.

24             In addition, as part of your sentence, I can order

25   restitution to any person or entity that was injured as a

14LJGOLP                      Plea

1    result of your criminal conduct.  I can also order you to

2    forfeit any and all proceeds derived from the criminal conduct.

3              Finally, I must order you to pay a $100.00 special

4    assessment.  That is separate from any fine or restitution or

5    forfeiture.

6              Count 3, which is the securities fraud count, carries

7    a maximum term of imprisonment of 20 years, a maximum term of

8    supervised release of three years, a maximum fine of the

9    greatest of either $5 million or again twice the gross gain or

10   twice the gross loss that resulted from the offense.

11             The difference between this one and the other count is

12   it is 250, or those other two alternatives, it is 5 million or

13   the other two alternatives.

14             In addition, I can also order that you pay

15   restitution.  I can also order you to forfeit any and all

16   proceeds.  Again there is a separate $100.00 special assessment

17   for this offense.  Do you understand that?

18             THE DEFENDANT:  I understand.

19             THE COURT:  If you take these two crimes together,

20   those two offenses carry a maximum total term of 25 years as

21   well as a $200 special assessment.  Those get aggregated.  The

22   other stuff, the supervised release would be concurrent and

23   fines and forfeitures would probably be the same I think for

24   the two counts, which we'll see when we get there.

25             Are you a United States Citizen, Mr. Goldfarb?

14LJGOLP                    Plea

1            THE DEFENDANT:  I am.

2            THE COURT:  Do you understand as a result of your

3    guilty plea, you could lose certain valuable civil rights.  You

4    could lose your right to vote, you could lose your right to

5    hold public office, you could lose your right to serve on a

6    jury, and you could lose your right to possess a firearm.

7            Do you understand that?

8            THE DEFENDANT:  I do.

9            THE COURT:  It likely would have an impact as well on

10   your law license.  Do you understand that?

11           THE DEFENDANT:  I am well aware of that, yes.

12           THE COURT:  With respect to supervised release, you

13   should be aware that there are terms and conditions associated

14   with supervised release, and so if I were to sentence you to a

15   term of supervised release, and then you failed to comply with

16   those conditions, I could send you to jail for the entire term

17   of supervised release.  You wouldn't get any credit for the

18   term you already served or the time you already served.

19           Do you understand that?

20           THE DEFENDANT:  I understand.

21           THE COURT:  I am sure you do, frankly, but I generally

22   give an example.  If I sentenced you -- I am just making this

23   up -- five years in jail followed by three years of supervised

24   release, that means you would serve the time in jail, you then

25   would be released, live at home, but you would be supervised by

                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                        Plea

1    the Probation Department.  You would have an officer you

2    reported to.  There would be perhaps a variety of conditions,

3    but certainly that would include you not commit any other

4    crimes, that you not possess firearms or drugs or anything like

5    that.  There will be others I think, too, but those I am sure

6    would be three.

7             If just imagine that for 35 months, two years and 11

8    months of your three-year term of supervised release you were

9    perfect, spot-on and then in the last month of the last year

10   you committed another crime or you had a gun, well then I could

11   sentence you to three years in jail, revoke supervised release

12   and put you back in jail three years, the full term of

13   supervised release, and you wouldn't get any credit for the 35

14   months you had been perfect.  Do you understand?

15            THE DEFENDANT:  I understand.  I assure you my life of

16   crime is over.

17            THE COURT:  Again I just use this as an example.  It

18   is sort of the worst-case scenario I can think up.  It is

19   important everybody understands that.

20            THE DEFENDANT:  I fully understand that.

21            THE COURT:  There is no parole in the federal system.

22   Do you understand that?

23            THE DEFENDANT:  I do.

24            THE COURT:  New York State has parole, other systems

25   have parole.  The way that works, typically a judge might

                SOUTHERN DISTRICT REPORTERS, P.C.       (212) 805-0300

20

14LJGOLP                    Plea

1    impose a sentence of 5 to 10 years, and a Parole Board, not the

2    judge, somebody else would decide when and whether a defendant

3    was ready to come out of jail and return to society.

4              There might be good reasons to have that kind of

5    system, but we don't in the federal system.  There was such a

6    system maybe 30 years ago, but not any more.  Whatever sentence

7    I impose, that is the sentence you would serve.

8              Do you understand that?

9              THE DEFENDANT:  I do.

10             THE COURT:  If I give you a five-year term, you would

11   serve five years.  The only exception to that, you could get up

12   to 15 percent of the sentence reduced for good behavior, but it

13   wouldn't be more than 15 percent and the decision whether you

14   had exhibited good behavior, that would be up to the Bureau of

15   Prisons, not up to me.  Do you understand?

16             THE DEFENDANT:  I do.

17             THE COURT:  You're not serving any other sentence at

18   this time, are you?

19             THE DEFENDANT:  No.

20             THE COURT:  State, federal?

21             THE DEFENDANT:  No.

22             THE COURT:  I want to go over with you a couple of

23   things about sentencing.  First of all, as I think you probably

24   know, the determination as to what sentence you will receive

25   will be made by me, by the court, and no one else.

21
14LJGOLP                    Plea

1          Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  Nothing your lawyer has said to you or

4    Mr. Fish or anyone else has said to you is binding on me.  I

5    will do my own analysis, my own assessment of the facts and

6    circumstances and then I will decide what is the appropriate

7    sentence.  Do you understand?

8          THE DEFENDANT:  I do.

9          THE COURT:  In addition, I want to make sure you

10   understand the current state of the law.  The law requires that

11   I consider certain factors in deciding an appropriate sentence.

12         According to Congress -- and, frankly, I would do this

13   even if I weren't required, but these are the things Congress

14   said I have to consider.  I have to consider your own life, the

15   facts and circumstances of your life.  You're an individual and

16   I have to impose a sentence that will be tailored to you as an

17   individual.  I will look at all the facts and circumstances of

18   your life.

19         The background, the family into which you were born,

20   the economic circumstances of your life, your educational

21   background, your work history, your family circumstances today,

22   all of the decisions good and bad you have made, I will look at

23   those carefully.

24         In addition, I have to look at the facts and

25   circumstances of these crimes.  I have to impose a sentence

                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

1   that is going to reflect the seriousness of these crimes, to

2   promote respect for the law and provide a just punishment for

3   these crimes.  I will look very carefully at the real details

4   of these crimes.

5           In addition, I have to consider the need to fashion a

6   sentence that will deter you and others from committing crimes.

7   A minute ago you said your life of crime is over.  I hope that

8   is true, and I take you at your word, but every judge has to

9   consider the likelihood of that fact and to fashion a sentence

10  that takes into account the need to discourage and deter the

11  defendant from committing crimes in the future, but also the

12  goal of discouraging and deterring others from committing

13  crimes like this in the future.  It is often hard to measure,

14  often hard to know what impact the sentence on one defendant in

15  a courtroom on a given day is going to have on other people who

16  are not in the courtroom, most likely.

17          Nevertheless, Congress thinks that is a valid

18  objective.  Intuitively that makes sense even if it is hard to

19  quantify.  That is a factor I would take into account.  Other

20  factors I would take into account are your own needs while

21  incarcerated.  If I were going to decide an incarceratory

22  sentence is appropriate, I would carefully consider what your

23  needs are while incarcerated, your health needs, psychiatric

24  needs, substance abuse treatment needs that many defendants

25  have, needs for educational opportunities, job training, all of

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

1    those things I would take into account.

2           Another factor I have to consider are the United

3    States Sentencing Guidelines.  Are you familiar with those?

4           THE DEFENDANT:  I am.

5           THE COURT:  Normally, I start waving them around the

6    room.  Mr. Soshnick has one in his bag?

7           MR. SOSHNICK:  I do.

8           THE COURT:  The one with the green cover?

9           MR. SOSHNICK:  No.  I have the printout, your Honor.

10          THE COURT:  I am sure you have seen them.  This is

11   Judge Cote's courtroom.  Apparently, she has them memorized.

12          They're big, 5 or 600 pages long.  A new edition comes

13   out each year.  I won't go over them in detail.  The points I

14   want to make, first of all, the guidelines are advisory.  There

15   was a time they were mandatory.  With very limited exceptions,

16   the court was obliged to fashion a sentence consistent with the

17   guidelines.  Now they're one factor of many that courts have to

18   consider, but I clearly will consider and I have to consider

19   the guidelines.

20          What the guidelines really attempt to do -- I am sure

21   Mr. Soshnick has explained this -- they attempt to provide some

22   objective factors courts look to so defendants are roughly the

23   same in terms of their involvement in a crime, in a criminal

24   history, will be treated roughly alike, recognizing that no two

25   defendants are exactly alike, but recognizing also the entire

14LJGOLP                    Plea

1     system of the criminal justice is undermined, people's

2     confidence is undermined if the sentence is imposed on

3     similarly-situated defendants varies radically simply because

4     of who the judge is or who the lawyer might be or who the

5     prosecutor is.

6           Courts are directed to look to the guidelines.  The

7     guidelines are divided in such a way there is a chapter or

8     subchapter for each crime or type of crime.  For a case

9     involving fraud or specifically insider trading, there is a

10    section in the guidelines.  I would look to that section and

11    would make certain findings consistent with the section.  I

12    would look to, among other things, the amount of the gain that

13    was realized as a result of this fraud.

14          I would look to other factors including one's role in

15    the offense.  If they were a major participant in a

16    sophisticated extensive scheme, they would be treated more

17    seriously than a person who was a minor participant in a large

18    scheme.

19          The nature of the fraud and sophistication are other

20    things I would look to.  I would go through the guideline and

21    make certain findings which could entail adding or subtracting

22    numbers and coming up with a total which is referred to as the

23    offense level.

24          I then go to a separate chapter in the guidelines and

25    do an analysis about criminal history.  Not surprisingly, a

                                                                      25
       14LJGOLP                    Plea

1    person who has prior convictions and served prior sentences is
2    treated more harshly than a person who has no prior convictions
3    or sentences.  I would go through that section, that chapter,
4    and make a determination as to which of six criminal history
5    categories is appropriate, one being the lowest, six being the
6    highest with those two findings, offense level, criminal
7    history.  I would then go to the back of the guidelines look
8    and look at the grid.  It is simply a grid and determine what
9    is the range in terms of months the Sentencing Commission
10   believes to be appropriate for that offense level and that
11   criminal history.
12          Ultimately I am free to go above or below that range.
13   I will make my findings what the range is under the guidelines
14   and consider where it is appropriate to sentence within or
15   outside the range.  Any questions?
16          THE DEFENDANT:  No.
17          THE COURT:  Finally, whatever sentence you receive,
18   whatever sentence I impose, you won't be able to withdraw your
19   guilty plea even if you're unhappy with it.
20          Do you understand that?
21          THE DEFENDANT:  I do.
22          THE COURT:  It could be the case you will conclude
23   that the sentence I impose is too harsh and not appropriate.
24   You might be convinced it is downright wrong.  You might be
25   able to appeal that sentence, saying I got it wrong.  You will

26

14LJGOLP                          Plea

1    not be able to say I'd like to go back to April 21st, take back

2    my guilty plea and go to trial.  That ship will have sailed.

3            Do you understand that?

4            THE DEFENDANT:  I understand.

5            THE COURT:  Let's talk about the plea agreement in

6    this case.  I received a draft from Mr. Fish.  It is a letter,

7    dated April 19th, a six page, single-spaced letter from

8    Mr. Fish and Mr. Tarlowe, his colleague at the U.S. Attorney's

9    Office, addressed to Mr. Soshnick.  What I have is signed by

10   Mr. Fish, but not signed by you.  That is the version I have.

11           Do you have the original in front of you there?

12           MR. SOSHNICK:  I do.

13           THE COURT:  Hang onto it a minute.  I will ask a

14   couple of questions about it.  Turn to the last page.

15   Mr. Goldfarb, is that your signature on the document?

16           THE DEFENDANT:  It is.

17           THE COURT:  Before you signed it, did you read it?

18           THE DEFENDANT:  I did.

19           THE COURT:  Did you review it with your attorney, Mr.

20   Soshnick?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Have you had a full opportunity to ask him

23   questions about it?

24           THE DEFENDANT:  I did.

25           THE COURT:  Mr. Soshnick, is that your signature on

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

1    the last page?

2         MR. SOSHNICK:  Yes.

3         THE COURT:  Before you signed it, did you have a full

4    opportunity to answer any questions your client may have had

5    about the document?

6         MR. SOSHNICK:  That's correct.

7         THE COURT:  If you could hand that up to my law clerk,

8    I will mark that as a court exhibit.  I will mark it as Court

9    Exhibit 2.  I will date and initial it.

10        (Pause)

11        THE COURT:  Mr. Goldfarb, I am not going to go over

12   this in great detail.  It is a six page, single-spaced letter,

13   but there are a couple of features of it I want to make sure

14   you understand.

15        One of the features of this agreement is that you and

16   the government have stipulated as to what is the sentencing

17   guidelines range.  Do you understand?

18        THE DEFENDANT:  I do.

19        THE COURT:  The whole description I just gave you how

20   the guidelines work, this agreement lays out what is the view

21   of you and your lawyer and the government as to how the

22   guidelines should be applied.

23        I want to make sure you understand I am not bound by

24   that.  You may be bound by it, Mr. Fish may be bound by it

25   along with his office, but I am obliged to do my own

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

28

14LJGOLP                    Plea

1    investigation and make my own findings.  I could go higher or
2    lower, but certainly this document doesn't include me as a
3    party.  Do you understand?
4              THE DEFENDANT:  I understand.
5              THE COURT:  One thing I want to make sure you
6    understand, this agreement provides that if I sentence you
7    within the guidelines range or below it -- so, in other words,
8    if I sentence you to 46 months or anything less than 46
9    months -- then you would waive or give up your right to appeal
10   the sentence or to otherwise challenge the sentence.
11             Do you understand?
12             THE DEFENDANT:  I do.
13             THE COURT:  There is a forfeiture component to this as
14   well, Mr. Fish?
15             MR. FISH:  We don't have the dollar amount in there.
16   The defendant agrees to forfeit the proceeds, but that is not
17   specified.
18             THE COURT:  You understand, according to this
19   agreement, you agree you're going to forfeit all the proceeds
20   from the crimes you're expecting to plead guilty?
21             THE DEFENDANT:  Can I ask my lawyer?
22             THE COURT:  Sure.  Take a minute.
23             (Off-the-record discussion)
24             THE DEFENDANT:  Judge, after speaking with my
25   attorney, my understanding, I want it to be on the record, what

             SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

1   I have received as the proceeds from this is approximately

2   $32,500.  So I believe I want to make sure that is what they're

3   talking about with regards to forfeiture.

4          THE COURT:  I am not sure.  I don't think the plea

5   agreement says.

6          MR. FISH:  Legally, I think it is not limited to what

7   he personally received.

8          THE COURT:  That is true.  In other words, if lots of

9   other gains were realized as a result of this crime and

10  everybody else is flat broke, but you've got a lot of money,

11  you then could be liable for the full amount of the gain.  Do

12  you understand that?

13         You would be required to forfeit the full amount.  If

14  everybody has cash, then you would be expected to pay your

15  share, but Mr. Fish I think is right, it is not limited to what

16  you put in your pocket.

17         THE DEFENDANT:  They're claiming I personally

18  benefited more than that amount.

19         THE COURT:  I don't know that is the relevant issue.

20  I don't think what you personally benefited.  It might be

21  relevant, but I don't think it is dispositive.  It is really

22  what gain was realized as a result from the crime.

23         THE DEFENDANT:  I understand.

24         THE COURT:  Or what loss to other people, but this is

25  primarily a gain-based analysis, right, Mr. Fish?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

                                                                    30
        14LJGOLP                    Plea

1              MR. FISH:  Yes.

2              THE COURT:  That is good.  I am glad to see you asking

3       questions when you have them.  That is important.

4              The other thing I want to make sure is nobody forced

5       you or threatened you to sign this agreement or to plead guilty

6       today.  Did anybody threaten you?

7              THE DEFENDANT:  No.

8              THE COURT:  Did anybody force you to either sign this

9       agreement or to plead guilty?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Has anybody offered you anything of value,

12      bribed you in any way to plead guilty today?

13             THE DEFENDANT:  No.

14             THE COURT:  Has anybody promised you what sentence

15      you'll receive?

16             THE DEFENDANT:  No.

17             THE COURT:  Does this agreement I have marked as a

18      court exhibit, which I will give the original back to Mr. Fish,

19      does this agreement constitute your entire agreement with the

20      government?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are there any other agreements you have,

23      either orally or in writing, that are not either referenced in

24      this agreement or superseded by this agreement?

25             THE DEFENDANT:  No, your Honor.

            SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

14LJGOLP                    Plea

1          THE COURT:  Mr. Soshnick, are you aware of any defense

2     that would prevail as a matter of law or any other reason why

3     Mr. Goldfarb should not be allowed to plead guilty to Counts 1

4     and 3 of the superseding indictment?

5          MR. SOSHNICK:  No, your Honor.

6          THE COURT:  At this time, Mr. Goldfarb, let me ask you

7     to stand, and I want you to tell me in your own words what it

8     is you did that makes you guilty of these crimes.

9          THE DEFENDANT:  Many years ago I was approached by

10    another defendant in the matter, Zvi Goffer.  I just graduated

11    law school at the time and I was doing basically legal work.

12    Mr. Goffer had mentioned to me if I knew anyone doing corporate

13    type of work, to let him know.  At the time he really didn't

14    tell me much more about anything, but then there came a time

15    later I really didn't know anyone doing that type of work.

16         A few years went by and then one of my college

17    roommates, Arthur Cutillo, his firm merged with another firm

18    and began doing corporate type of work.  At that time I had

19    remembered what Zvi Goffer had asked me, and I set up a dinner

20    between myself and Arthur Cutillo and Zvi Goffer.  At that

21    dinner, Zvi Goffer explained to me and to Mr. Cutillo that he

22    was looking for any type of information that he may come across

23    in the course of his employment that might benefit him and

24    where he might be able to make some money.

25         After that time, nothing really happened for a while.

14LJGOLP                      Plea

1   Then eventually I got a call from Mr. Cutillo, and he had

2   informed me that he had been speaking with another attorney in

3   his firm at the time.  I came to know later on the attorney's

4   name was Brien Santarlas, and he had information, and then they

5   set up a meeting between myself, Mr. Cutillo and Mr. Santarlas

6   and they began to relay information to Zvi Goffer using me as

7   an intermediary.  With great regret, I made a horrible mistake

8   and agreed to partake in this scheme.

9           THE COURT:  From the first dinner that you described

10  until the last, the last act in furtherance that you took, what

11  time period are we talking about?

12          THE DEFENDANT:  The first dinner was somewhere around

13  probably 2004, 2005.  And then your question was until the

14  last?

15          THE COURT:  Yes, until when?

16          THE DEFENDANT:  Probably somewhere in the middle of

17  2008 maybe.

18          THE COURT:  When you did these things, you agreed with

19  these men and you did these things, did you know what you were

20  doing was wrong and illegal?

21          THE DEFENDANT:  I did, your Honor.  I just wanted to

22  clarify one point.  Throughout that time period really I know I

23  said from around 2004 to 2005 until around 2008, nothing really

24  happened after the dinner for quite some time, years probably.

25          THE COURT:  Years?

33

14LJGOLP                    Plea

1           THE DEFENDANT:  It was a smaller time-frame.  It was

2     around 2007 to 2008.  The dates are hard to remember, but

3     around that time.

4           THE COURT:  This involved information that was going

5     to be used for the purchasing of public stocks, is that right,

6     stocks in a public company?

7           THE DEFENDANT:  Correct.

8           THE COURT:  Understanding it was inside information

9     that belonged to the clients of Mr. Santarlas' and Mr.

10    Cutillo's law firm?

11          THE DEFENDANT:  I understood they were likely

12    breaching a fiduciary duty.

13          THE COURT:  You knew they would be purchasing stocks

14    on national exchanges, presumably?

15          THE DEFENDANT:  Not them, but Mr. Goffer, yes.

16          THE COURT:  That was part of the scheme?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  Did some portion of this

19    activity take place in Manhattan?

20          THE DEFENDANT:  It did.

21          THE COURT:  Mr. Fish, is that a satisfactory

22    allocution?  Have I missed any elements?

23          MR. FISH:  It is certainly satisfactory with the

24    conspiracy.  With respect to the substantive, one of the stocks

25    that he obtained information about was 3Com, and the

14LJGOLP                    Plea

1   substantive charge relates to purchase of 3Com stock Mr. Goffer

2   made on or about August 7th, 2007 of 75,000 shares.

3           THE COURT:  But you agree for the conspiracy, that is

4   a satisfactory allocution?

5           MR. SOSHNICK:  Yes.

6           THE COURT:  I was going to turn to the substantive

7   now.  That is about a specific stock that was purchased, 3Com.

8           Can you just tell me a little bit about what happened

9   in connection with that stock?

10          THE DEFENDANT:  Yes.  At that first meeting I spoke

11  about earlier with myself, Mr. Cutillo and Santarlas,

12  Mr. Santarlas relayed that he had heard that 3Com was going to

13  be bought out by another company, a Japanese company, and he

14  told me to relay the information to my friend, which is Mr.

15  Goffer.

16          THE COURT:  When was that, roughly?

17          THE DEFENDANT:  Probably around July of 2007,

18  approximately, Judge.

19          THE COURT:  The indictment talks about August 7th of

20  2007.  Does that sound about right?

21          THE DEFENDANT:  That sounds about right.

22          THE COURT:  That is when the purchase was.  The

23  information was relayed shortly before that?

24          THE DEFENDANT:  Right before that, I am assuming,

25  yeah.

            SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

35

14LJGOLP                    Plea

1          THE COURT:  Again you knew what you were doing was
2   wrong and illegal?
3          THE DEFENDANT:  I did, your Honor.
4          THE COURT:  And some portion of that offense is what
5   led to the August 7th purchase that took place in Manhattan?
6          THE DEFENDANT:  Yes, your Honor.
7          THE COURT:  Mr. Fish, is that satisfactory?
8          MR. FISH:  Yes.
9          THE COURT:  Mr. Soshnick, you agree?
10          MR. SOSHNICK:  Yes, I do, your Honor.
11          THE COURT:  Mr. Goldfarb, you can have a seat.
12          I am now going to ask Mr. Fish to summarize the
13   government's evidence, the evidence they would introduce if
14   this case went to trial with respect to these charges as they
15   pertain to you.  Listen carefully to Mr. Fish.  If when he is
16   finished, you disagree with something he has said or you would
17   like to clarify or qualify something he has said, then I will
18   give you that opportunity.  Mr. Fish.
19          MR. FISH:  At trial the government would show that Mr.
20   Goffer obtained from Arthur Cutillo and Brien Santarlas
21   material nonpublic information that Cutillo and Santarlas
22   misappropriated from Ropes & Gray, a law firm, in violation of
23   their duties and trust and confidence to Ropes & Gray and its
24   clients, and Mr. Goffer obtained this information using Jason
25   Goldfarb as an intermediary.

36

14LJGOLP                    Plea

1          For example, in or about July or August 2007, Cutillo

2     and Santarlas told Goldfarb that Ropes & Gray was working on

3     the acquisition of 3Com Corporation.  Cutillo and Santarlas, S

4     A N T A R L A S, told Goldfarb information about the

5     transaction that they misappropriated from Ropes & Gray,

6     including pricing information.  Cutillo and Santarlas

7     periodically updated Goldfarb on the progress of the

8     transaction until it was publicly announced.

9          Based on this material nonpublic information, on or

10    about August 7, 2007, Zvi Goffer purchased approximately 75,000

11    shares of 3Com stock.  In addition, in or about late October or

12    November 2007, Cutillo and Santarlas told Goldfarb that Ropes &

13    Gray was working on the acquisition of Axcan Pharma, Inc.

14    Cutillo and Santarlas periodically updated Goldfarb on the

15    progress of the transaction until it was publicly announced.

16         Cutillo and Santarlas and Mr. Goldfarb provided the

17    information to Zvi Goffer in exchange for the promise of cash

18    payments.  After the acquisition of 3Com was announced, Zvi

19    Goffer paid approximately $75,000 in total to Jason Goldfarb,

20    Arthur Cutillo and Brien Santarlas.  After the Axcan

21    acquisition was announced, Zvi Goffer paid approximately

22    $22,500.00 to Jason Goldfarb, Arthur Cutillo and Brien

23    Santarlas.

24         Trades in Zvi Goffer's account and his brother Manuel

25    Goffer's account on the 3Com information resulted in profits in

37

14LJGOLP                          Plea

1    excess of a million dollars.

2              Jason Goldfarb, Arthur Cutillo and Brien Santarlas and

3    Zvi Goffer used prepaid cellular telephones to communique

4    regarding the inside information.  They used these phones to

5    communicate in order to avoid detection by authorities.  The

6    government's evidence would include recorded telephone

7    conversations, witness testimony and documents.

8              THE COURT:  Thank you, Mr. Fish.

9              Mr. Soshnick?

10             MR. SOSHNICK:  The only comment I have about what

11   Mr. Fish said, which is truthful and accurate in all respects,

12   the $75,000 that was paid was to be divided by all three of the

13   co-conspirators, that is to say, the $75,000 was to be divided

14   among Santarlas and my client and the third co-conspirator, and

15   likewise with respect to the 22,5, that was also to be divided

16   among the three co-conspirators, Cutillo, Santarlas and my

17   client.  I don't want the court to believe my client received

18   $97,000 in this case because it was really about a third of

19   that amount.

20             THE COURT:  I surmised as much from what Mr. Goldfarb

21   said before.

22             MR. SOSHNICK:  I just wanted to be sure you understood

23   what my client said was truthful and accurate in all respects

24   and what Mr. Fish said was truthful and accurate in all

25   respects.

                SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

14LJGOLP                    Plea

1            When Mr. Fish gave his recitation, he said the $75,000
2    was paid to Goldfarb, around 22,500 was paid to Goldfarb, which
3    is true, but the understanding was that my client would then
4    divide it in three so that each of the three co-conspirators
5    would get one-third of those sums.
6            THE COURT:  He was the intermediary for both the
7    information going in one direction and the money going in the
8    other?
9            MR. SOSHNICK:  That is correct, your Honor.
10           THE COURT:  We will have time to talk more about that.
11   It may be relevant to sentencing, but it doesn't affect the
12   allocution, all right?
13           I will accept the allocution.  I think it is
14   satisfactory.  Mr. Goldfarb, Mr. Soshnick made that point.  Are
15   there any other points you would like to make with respect to
16   anything Mr. Fish said?
17           THE DEFENDANT:  No, your Honor.
18           THE COURT:  Let me ask you to stand again.
19           How do you now plead to Counts 1 and 3 of the
20   superseding indictment, guilty or not guilty?
21           THE DEFENDANT:  I plead guilty, your Honor.
22           THE COURT:  Did you do the things you're charged with
23   doing in the indictment?
24           THE DEFENDANT:  I did.
25           THE COURT:  Are you pleading guilty because you are

SOUTHERN DISTRICT REPORTERS, P.C.         (212) 805-0300

```
                                                           39
     14LJGOLP                    Plea
```

1   guilty?

2          THE DEFENDANT:  I am pleading guilt because I am, in

3   fact, guilty.

4          THE COURT:  Are you pleading guilty of your own free

5   will and voluntarily?

6          THE DEFENDANT:  I am.

7          THE COURT:  Mr. Goldfarb, because you acknowledge your

8   guilt, because you understand your rights and have waived those

9   rights, because your guilty plea is supported by an independent

10  basis in fact for each of the elements of the crime, because

11  your plea is entered knowingly and voluntarily, I accept your

12  guilty plea and adjudge you guilty on Counts 1 and 3 of the

13  indictment.  Have a seat.

14         What I would normally do now is schedule a date for

15  sentencing.  Typically that would be three to four months out.

16  So I think that is probably what I will do today.

17         Is there any reason why I shouldn't schedule sentence

18  on that time-frame?

19         MR. FISH:  No.

20         THE COURT:  Mr. Soshnick?

21         MR. SOSHNICK:  That is fine.

22         THE COURT:  That puts us into basically July or

23  August.  I don't know if you know what your summer plans are,

24  counsel?

25         MR. SOSHNICK:  Your Honor, what date in August would

14LJGOLP                    Plea

1    be convenient for the court?

2            THE COURT:  I think probably the latter half of

3    August.  Well, we could do the end of July or we could do --

4            MR. SOSHNICK:  Do you do sentences on a particular day

5    of the week?

6            THE COURT:  Not necessarily.  Often do them on a

7    Friday because if I have a trial, then I cannot have my trials

8    on Fridays, as I typically use that day for other calendar

9    things.  It doesn't have to be a Friday.

10           MR. SOSHNICK:  Is august 19th convenient?  It is a

11   Friday.

12           THE COURT:  Sure.  Say 10:00 o'clock, August 19th, at

13   10:00 o'clock?

14           MR. SOSHNICK:  Very good.  I know you will be ordering

15   a probation report.  I would be like to be present when my

16   client is interviewed.

17           THE COURT:  You anticipated what I was about to say.

18           Mr. Goldfarb, the way the sentencing works, and you

19   probably have a sense of this, I will direct the Probation

20   Department to prepare a report, presentence report.  That

21   report is often quite extensive.  It might be 30 pages or so

22   long.  It will provide a lot of information about the crimes in

23   much more detail than we talked about day.  It will include a

24   lot of information about you in great detail because as I

25   mentioned, those are facts that more greatly affect the

14LJGOLP                    Plea

1    sentence I impose.

2         In order to prepare this report, the Probation

3    Department will gather information from a variety of sources

4    and they will interview many people.  One of the people they

5    will interview is you.  So Mr. Soshnick has indicated he wants

6    to be present for any interview, which is appropriate and wise.

7    So I will direct that no interview take place unless he is

8    present.

9         I can't imagine this happening, but if I happened, the

10   probation officer came to you and said I want to interview you,

11   and your lawyer wasn't there, you politely say I won't do this

12   without my lawyer.  I never heard of it happening.  If it

13   happens, that is what you should say.  Once you are

14   interviewed, you should be truthful, complete and thorough in

15   your answers.  If Mr. Soshnick directs you not to answer

16   certain questions, you should listen to him.  At least confer

17   with him, but under no circumstances should you make any false

18   statements to the probation officer.  If you were to do that,

19   that could be a separate crime.  It also could be a factor that

20   would enhance your sentencing guidelines and it could be

21   significant because it would be an obstruction of justice.

22        You wouldn't get credit for acceptance of

23   responsibility and might get an enhancement for obstruction of

24   justice, which would significantly alter what your sentencing

25   range looks like.  So don't do that.  Once the report has been

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

42

14LJGOLP                        Plea

1    prepared, you will get a copy of a draft prepared by the
2    probation officer.  Mr. Soshnick will as well.  So will
3    Mr. Fish.  If there are portions of that draft that you
4    disagree with, then you should let the Probation Office know.
5    Mr. Soshnick should do it for you.  Say we disagree with
6    Paragraphs 14, 19, 22 and 67, and here is why.
7            The Probation Department will issue a final report.
8    That one will come to me.  You'll get a copy, as will the
9    lawyers.  If there are still portions you don't agree with,
10   then you should object to those, and for any objections, I'll
11   have a hearing which will resolve the issue.  Perhaps we will
12   have testimony, perhaps we will have exhibits.  Perhaps we will
13   just have argument.  The lawyers will say we agree on what the
14   facts are, but we disagree on the conclusions those facts
15   warrant.
16           I will make a finding and resolve the dispute.  It
17   could be that the objection is over a fact that is ultimately
18   not that important, it won't affect the sentence.  If that is
19   the case, I will let you know that, say I don't have to resolve
20   it because it is immaterial.
21           It is customary for defendants when they are preparing
22   for sentencing to make submissions, so I expect Mr. Soshnick
23   will probably want to make a submission on your behalf that
24   will provide information about you, perhaps make arguments what
25   might be an appropriate sentence.  It is not uncommon for those

                SOUTHERN DISTRICT REPORTERS, P.C.         (212) 805-0300

14LJGOLP                    Plea

1    submissions to include letters from friends, family members,
2    co-workers, people that know you and can speak to you and your
3    character.  That is, frankly, helpful.  I read them.  It gives
4    me a much broader view and understanding of the person that I
5    will be sentencing, and that is a good thing.
6           If there are people who would like to write those
7    letters, coordinate with Mr. Soshnick.  He will make it part of
8    his submission so I am not getting loose letters, instead I get
9    everything at once.  The government will have an opportunity to
10   make a submission as well.  I well read that submission
11   carefully.  Then we'll appear here on August 19th.
12          Before I impose sentence, I will hear from the lawyers
13   to be sure.  I might hear from others, but I certainly would
14   give you the right to address the court.  You have a right to
15   do that.  You don't have to do it, but you have a right to and
16   you will be welcome to.  Then and only then will I be prepared
17   to sentence you.  At that point I will tell you the sentence I
18   intend to impose, I will explain my reasons for it, I will then
19   ask the lawyers if there is any legal impediments to my
20   imposing that sentence.  If there isn't, I will formally impose
21   the sentence.  That is basically how it works.
22          August 19th is the date we will go forward.  If that
23   date changes, Mr. Soshnick will let you know, but we should be
24   able to go forward on that day.  Is there anything else we need
25   to cover today, Mr. Fish?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

                                                                  44
    14LJGOLP                    Plea

1              MR. FISH:  No, your Honor.
2              MR. SOSHNICK:  I want to thank you for the courtesy
3    you extended to me earlier this week on Tuesday when I was
4    observing Passover.  Also I want to thank you for your time and
5    consideration today and all of the time that you spent
6    explaining every phase of the proceedings to my client because
7    although he is an attorney, his area of expertise is workers
8    compensation, and he is really unfamiliar with much of what you
9    covered.  You really covered it very, very well and I just want
10   to thank you.
11             THE COURT:  You needn't thank me.  I am sure you
12   covered most of those things with your client.  Some of it is
13   pretty basic, but look, it is important not to rush through
14   these things.  Mr. Fish can attest I am probably one of the
15   slowest in the courthouse in taking a plea.
16             I think it is important to make sure people understand
17   what is taking place and give them an opportunity to ask
18   questions, that they not feel rushed as if this is some sort of
19   mundane transaction.  This is an important day in
20   Mr. Goldfarb's life.  It is an important day for everybody.  We
21   have to treat it as such.  Thank you for your comments.  I am
22   sure most of it or almost all of it were things you covered.
23             MR. SOSHNICK:  I appreciate it.  I have to tell you
24   that the extra time you spent was very much appreciated because
25   it is one thing when a lawyer sits down with a client, another

              SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300

14LJGOLP                    Plea

1    thing when the judge takes the time to go over everything so
2    thoroughly.
3           THE COURT:  Thank you.  Happy Passover to you.  See
4    you all in the summer.  In the interim, Mr. Goldfarb will
5    remain on bail, correct?
6           MR. FISH:  Yes.
7           THE COURT:  Mr. Goldfarb, you have to continue to
8    abide by all the conditions of your bail.  I expect that won't
9    be a problem.  If it were, that would not be a good thing.
10          THE DEFENDANT:  It won't be a problem.  Again thank
11   you for your time.
12          THE COURT:  Be zealous in your adhering to all of the
13   requirements.
14          THE DEFENDANT:  Absolutely.
15          THE COURT:  Let me thank the Court Reporter as well,
16   as always.
17          (Court adjourned)
18
19
20
21
22
23
24
25

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300